Georgina Lewis, also known as Georgina Wilson, was charged with the sale of drugs, namely Methamphetamine hydrochloride, a controlled substance, in violation of the provisions of the Alabama Uniformed Controlled Substances Act, § 20-2-70, Code of Alabama 1975. She entered a plea of not guilty and her attorney proceeded to file motions. On Monday, February 11, 1985, she waived a trial by jury, withdrew her plea of not guilty, and pleaded guilty. Adjudged guilty, she was sentenced to 3 years' imprisonment in the penitentiary on a negotiated plea. No fine was assessed. On February 28, she filed a motion to withdraw her guilty plea, alleging first that she had not been advised of the ramifications of the Habitual Felony Offender Act and, second, that her guilty plea was entered because of the insistence of friends who were with her in the courtroom and not because she was guilty. The motion to withdraw her guilty plea was denied, and an attorney for appeal was appointed.
On appeal, she contends that although she was advised of the minimum and maximum sentences to the penitentiary which she might receive, she was not advised at all of the possibility of being fined up to $25,000 for a violation of § 20-2-70, Code of Alabama 1975, and cites Abbott v. State, 459 So.2d 995
(Ala.Cr.App. 1984). The "Motion To Enter Guilty Plea" employed in the 13th Circuit states in paragraph 5 thereof:
 "5. I understand that the law applicable to such a charge provides that the punishment for that offense is imprisonment in the State penitentiary for not less than 2 years nor more than 15 years. I wish to enter a Plea of Guilty to the offense of Sale of Methamphetamine."
The guilty plea form does not provide any space for advising the defendant what fine, if any, may be imposed by law. The form further states in paragraph 12:
 "12. I further understand that any agreement or recommendations that have been or may be made by the State of Alabama through the District Attorney do not bind the Court and may not be followed in imposing sentence or granting probation."
The state on the other hand contends that "the line must be drawn as to what possible consequences must be explained to the defendant, and the state contends that the possibility of a monetary fine is not so momentous as to require [that] the trial court expressly inform a defendant, who is also represented by counsel, thereof."
We find as a fact that the court in its colloquy did not advise this accused of a possible fine of up to $25,000. We further find as a fact that the guilty plea form employed in this case, referred to by this court as an "Ireland Form"(Ireland v. State, 47 Ala. App. 65, 250 So.2d 602 (1971)) did not advise the accused of the possible fine. The thrust of appellant's contention is that the guilty plea was involuntary because it was not an "intelligent and informed" plea. If the accused did not know what she faced as a direct consequence of the plea, then the plea itself could not have been intelligently made.
Section 13A-5-11, Code of Alabama 1975, "Fines for felonies," states:
 "(a) A sentence to pay a fine for a felony shall be for a definite amount, fixed by the court, within the following limitations:
 (1) For a Class A felony, not more than $20,000.00;
 (2) For a Class B felony, not more than $10,000.00;
 (3) For a Class C felony, not more than $5,000.00; or
 (4) Any amount not exceeding double the pecuniary gain to the defendant *Page 1358 
or loss to the victim caused by the commission of the offense.
 (b) As used in this section, `gain' means the amount of money or the value of property returned to the victim of the crime or seized or surrendered to lawful authority prior to the time sentence is imposed. `Value' shall be determined by the standards established in subdivision 14 of section 13A-8-1.
 (c) The court may conduct a hearing upon the issue of defendant's gain or the victim's loss from the crime according to procedures established by rule of court."
Section 13A-5-12, Code of Alabama 1975, states:
 "(a) A sentence to pay a fine for a misdemeanor shall be for a definite amount fixed by the court, within the following limitations:
 "(1) For a Class A misdemeanor, not more than $2,000.00;
 "(2) For a Class B misdemeanor, not more than $1,000.00;
 "(3) For a Class C misdemeanor, not more than $500.00; or
 "(4) Any amount not exceeding double the pecuniary gain to the defendant or loss to the victim caused by the commission of the offense.
 "(b) A sentence to pay a fine for a violation shall be for a definite amount, fixed by the court, not to exceed $200.00, or any amount not exceeding double the pecuniary gain to the defendant or loss to the victim caused by the commission of the offense.
 "(c) As used in this section, `gain' means the amount of money or the value of property derived from the commission of the crime, less the amount of money or the value of property returned to the victim of the crime or seized or surrendered to lawful authority prior to the time sentence is imposed. `Value' shall be determined by the standards established in subdivision 14 of section 13A-8-1.
 "(d) The court may conduct a hearing upon the issue of defendant's gain or the victim's loss from the crime according to procedures established by rule of court."
Payment of court costs may be required of an accused person pleading guilty, under the provisions of § 15-22-52, Code of Alabama 1975, and imposed as a condition of probation. Under the provisions of Article 4 (a) of Title 15 of the Alabama Code, all perpetrators of criminal activity or conduct are required to fully compensate all victims of such conduct or activities for any pecuniary loss, damage, or injury as a direct or indirect result thereof. This article requires a restitution hearing after conviction and provides that "the court shall order that defendant make restitution or otherwise compensate such victims for any pecuniary damages."
Even these sections do not end the possible pecuniary exposure of a defendant. Section 15-22-52, provides that the court may impose as a condition of probation "reparation or restitution to the aggrieved party for the damage or loss caused by his offense in an amount to be determined by the court. . . ." Rule 10, Temp. Alabama Rules of Criminal Procedure, addresses the subject of fine or restitution, and in subparagraph (f) gives the court the authority to incarcerate a defendant for nonpayment of a fine or restitution, within limits.
It is apparent, therefore, that any accused person who enters a guilty plea, even to the merest "violation," not amounting to a misdemeanor, all the way upscale to a capital offense, faces the possibility of the imposition of a fine and of a requirement of restitution or reparation.
We held in Knight v. State, 55 Ala. App. 55, 317 So.2d 532
(1975), that if a defendant was improperly advised in pleading guilty as to his range of punishment, then the defendant's guilty plea was involuntary. It was held in Tucker v. UnitedStates, 409 F.2d 1291, appeal after remand, United States v.Woodall, 438 F.2d 1317, cert. denied, 403 U.S. 933,91 S.Ct. 2262, 29 L.Ed.2d 712 (1971), that a guilty plea is invalid if the defendant did not know the maximum possible penalty for the offense. It has been held in Davis *Page 1359 v. State, 348 So.2d 844 (Ala.Cr.App.), cert. denied,348 So.2d 847 (Ala. 1977), that in a guilty plea proceeding, the judge should undertake a factual inquiry to determine if the plea is voluntarily made with understandings of the nature of the charge and of the consequences of the plea.
A discussion of the voluntariness of a plea must necessarily begin with Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709,23 L.Ed.2d 274 (1969), which held that three different constitutional rights were involved in the waiver that took place when a plea of guilty was entered in a state criminal trial: the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. The Supreme Court stated:
 "What is at stake for an accused facing death or imprisonment demands the uttermost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought [citing cases], and forestalls the spin-off of collateral proceedings that seek to probe murky memories." 395 U.S. at 243-44, 89 S.Ct. at 1712-13.
By footnote to this quoted paragraph, the Court quotes with approval the following language from a Pennsylvania case:
 "`A majority of criminal convictions are obtained after a plea of guilty. If these convictions are to be insulated from attack, the trial court is best advised to conduct an on the record examination of the defendant which should include, inter alia, an attempt to satisfy itself that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and the permissible range of sentences.'" 395 U.S. at 244, 89 S.Ct. at 1713, quoting Commonwealth ex. rel. West v. Rundle, 428 Pa. 102, 105-06, 237 A.2d 196, 197-98 (1968).
Although Boykin was denounced in dissent by Justices Harlan and Black as "today's constitutional edict," 395 U.S. at 247,89 S.Ct. at 1714, it is now, 16 years later, unquestionably the law of the land.
Because entering a plea of guilty constitutes a relinquishment of substantial constitutional rights, it is governed by federal, not state, standards. Boykin, supra;United States v. French, 719 F.2d 387 (11th Cir. 1983). A guilty plea is involuntary if made in ignorance of the consequences, including the length of any possible sentence.French, supra.
Rule 11 (c), Federal Rules of Criminal Procedure, requires that the defendant be informed of "(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law."
Misinformation to the defendant regarding the length of the maximum possible punishment was held to be reversible error inMoore v. State, 54 Ala. App. 463, 309 So.2d 500, (Ala.Cr.App. 1965).
This court held in Pratte v. State, 448 So.2d 502
(Ala.Cr.App. 1984): "Since knowledge of the range of possible penalties plays an important part in an accused's decision whether or not to plead guilty, the maximum and minimum sentences should be stated with reasonable precision." 448 So.2d at 504. Any time the minimum and maximum sentences are incorrectly stated to an accused, then presumably he does not have the necessary information upon which to make an informed decision as to whether or not to plead guilty and the case must be remanded for him to "plead anew."
Also in Smith v. State, 441 So.2d 1062 (Ala.Cr.App. 1983), we held that the failure to inform a defendant of the maximum and minimum possible sentences before acceptance of his guilty plea warranted a reversal on conviction. To the same effect areThompson v. State, 441 So.2d 1058 (Ala.Cr.App. 1983); Hall v.State, 418 So.2d 946 (Ala.Cr.App. 1982); Alston v. State,414 So.2d 488 (Ala.Cr.App. 1982); Chapman v. *Page 1360 State, 412 So.2d 1276 (Ala.Cr.App. 1982); McGhee v. State,412 So.2d 327 (Ala.Cr.App. 1982); Miliner v. State, 414 So.2d 133, appeal after remand, 431 So.2d 581, cert. denied, 431 So.2d 582
(Ala.Cr.App. 1981); Scroggins v. State, 410 So.2d 439
(Ala.Cr.App. 1981), and many other such cases.
A different rule obtains, however, as to whether the accused is entitled to be informed of all the consequences of his guilty plea before his plea is considered to have been intelligently entered. In Sheehan v. State, 411 So.2d 824
(Ala.Cr.App. 1981), this court considered the question whether a guilty plea was informed and voluntary when the accused was not informed whether his sentence was to run consecutively or concurrently with another sentence. This court, speaking through Judge, now Presiding Judge, Bowen, recited Boykin and stated:
 "However, Boykin did not adopt a constitutional requirement that an accused be informed of all the consequences of his guilty plea before the plea will be considered intelligently entered. For example, see United States v. Degand, 614 F.2d 176 (8th Cir. 1980), holding that the failure of the trial court to inform the defendant that any federal sentence imposed might not run concurrently with the state sentence the defendant was already serving at the time did not vitiate the guilty plea."
This court cited the Supreme Court of Arizona in State v.Young, 106 Ariz. 589, 480 P.2d 345 (1971), holding that "failure to advise [the accused] of the possibility of consecutive sentences does not violate the principles enunciated in Boykin."
Later, in Minnifield v. State, 439 So.2d 190 (Ala.Cr.App. 1983), this court addressed the question of whether the accused had a right to be informed that his guilty plea might be used at some future date to enhance punishment for a future crime. Speaking for a unanimous court, Judge Hubert Taylor stated:
 "Furthermore, a trial court is not required, before accepting a guilty plea, to inform the accused that a conviction based upon his guilty plea might be used at some future date to enhance punishment for some hypothetical future crime. Wright v. United States, 624 F.2d 557, 561 (5th Cir. 1980); Zambuto v. State, 413 So.2d 461 (Fla.Dist.Ct.App. 1982); Smithwick v. State, 636 S.W.2d 557 (Tex.Ct.App. 1982); McMillan v. Williams, 116 Misc.2d 171, 455 N.Y.S.2d 523 (1982); State v. Mace, 97 Wn.2d 840, 650 P.2d 217 (1982). An accused is entitled to information concerning the direct consequences of his plea. He is not entitled to information concerning all collateral effects, or future contingencies that might arise. The possible enhancement of punishment for a future crime is not a direct consequence of a plea of guilty."
The court went on to note that in Miliner, supra, and Hall,supra, the defendants had prior convictions which made them subject to the "enhancement of punishment" provisions of the Habitual Felony Offender Act and changed the minimum and maximum penalties as regarded their guilty plea. As Judge Taylor stated, "This failure in Miliner and Hall was a failure to inform the defendant of a direct consequence of his guilty plea and the convictions were, accordingly, reversed."
Section 14-1.4, ABA Standards for Criminal Justice, Pleas of Guilty, proposes that the court should not accept the plea before first
". . . determining that the defendant understands:
". . .
 "(ii) the maximum possible sentence on the charge, including that possible from consecutive sentences, and the mandatory minimum sentence, if any, on the charge, or of any special circumstances affecting probation or release from incarceration."
The commentary to this standard states:
 "As used in this standard, the `maximum possible sentence' includes punishment possible by virtue either of the sentence provisions of the statute under which the charge is brought or of other statutes *Page 1361 
that authorize added penalties because of special circumstances in the case."
Since a monetary fine is a direct consequence of a guilty plea, very few cases address the question of what happens if the court fails to apprise the accused of the possibility of a monetary fine. The cases located, however, seem to agree that failure to apprise the accused of a monetary fine provision does not constitute reversible error where no fine is, in fact, levied.
One such case is People v. Cueller, 73 Mich. App. 88,250 N.W.2d 553 (1977). In that case the Court of Appeals of Michigan found no reversible error and quoted with approvalGuilty Plea Cases, 395 Mich. 96, 117-118, 235 N.W.2d 132
(1975), as follows:
 "The rule does not require the judge to inform the defendant of all sentence consequences — only the maximum sentence, any mandatory minimum and, as appears below, if he is on probation or parole, the possible effect on his status as a probationer or parolee."
The court then commented: "[We] cannot help but note as well that no fine was imposed, and so can find no prejudice in this case. If error there was, the error must be deemed harmless." (Citations omitted.)
In United States v. Sinagub, 468 F. Supp. 353 (W.D.Wisc. 1979), court noted that it had inaccurately informed the defendant that, as to each count of the indictment, in addition to the sentence of imprisonment, he could be fined as much as $5,000 rather than the correct amount of $1,000. The court held that this omission did not constitute a violation of the rule that requires that a defendant be informed of the maximum possible penalty provided by law, where a sentence of imprisonment was imposed, but no fine was imposed. This case was later affirmed by the United States Court of Appeals for the Seventh Circuit and certiorari was denied by the United States Supreme Court at 444 U.S. 942, 100 S.Ct. 298,62 L.Ed.2d 309 (1979). Courts have held to the contrary, however, inCommonwealth v. Casner, 315 Pa. Super. 12, 461 A.2d 324 (1983);Commonwealth v. Weiss, 289 Pa. Super. 1, 432 A.2d 1020 (1981).
It is clear that where a fine is mandatory, failure to inform the defendant of its existence constitutes reversible error.People v. Nickerson, 96 Mich. App. 604, 293 N.W.2d 644 (1980).
Although the levy of a fine may constitute heavy punishment, it does not directly affect the "liberty interest," as that term is employed in Argersinger v. Hamlin, 407 U.S. 25,92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). In that case the United States Supreme Court said:
 "We hold, therefore, that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial."
We find it practical to draw the line at the point of the "liberty interest." If the court does not in fact levy any monetary fine, then the defendant is not injured by the court's failure to apprise him of the possible fine.
We hold, therefore, that the court which accepts a guilty plea is not obliged to inform the accused of a potential fine, which may be a direct consequence of that plea, unless the court intends to levy a fine.
We refuse to establish a rule that requires a judge to conduct every prospective guilty pleader on a guided tour through the criminal procedure sections of the Code of Alabama. The court in this case did not err to reversal in failing to advise the appellant that she also faced a possible fine as a consequence of her plea of guilty to the charge of selling a controlled substance, when, in fact, no fine was levied.
This case is due to be affirmed.
AFFIRMED.
All the Judges concur. *Page 1362